UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE M. S.[1], | |
| Petitioner, | No. 1:25-cv-01811-TLN-CSK |
| v. | **ORDER** |
| TONYA ANDREWS[2], in official capacity as the Facility Administrator of Golden State Annex, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner Enrique M.S.'s ("Petitioner") Motion for a Temporary Restraining Order[3] ("TRO"). (ECF No. 1.) Respondents filed a motion to dismiss the

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

[2] The Clerk of Court is directed to update Respondent Warden of the Golden State Annex to Respondent Tonya Andrews, in her official capacity as the Facility Administrator of Golden State Annex.

[3] On December 11, 2025, Petitioner filed a Petition for Writ of Habeas Corpus. (ECF No.

1

1  petition.[4]  (ECF No. 6.)  Petitioner filed a reply.  (ECF No. 7.)  For the reasons set forth below,
2  Petitioner's motion is GRANTED.

3      **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

4  Petitioner alleges he was born at the home of his great aunt in El Cajon, California.  (ECF
5  No. 6-1 at 8.)  According to Petitioner, he went to Mexico with his mother and grandmother when
6  he was two months old, attended kindergarten in Mexico, and returned to the United States to
7  start first grade in El Cajon.  (*Id.* at 16.)

8  On December 27, 2004, the Department of Homeland Security ("DHS") issued a Notice to
9  Appear ("NTA") commencing removal proceedings against Petitioner.  (*Id.* at 8.)  Petitioner
10  contested removability and claimed he was a United States citizen.  (*Id.*)  In August 2005, an
11  immigration judge terminated removal proceedings against Petitioner, finding there was reason to
12  believe that Petitioner was born in El Cajon, California.  (*Id.* at 9.)

13  In August 2017, DHS filed a motion to reopen Petitioner's removal proceedings and
14  attached a Mexican birth record bearing Petitioner's name.  (ECF No. 6 at 4.)  Following a
15  hearing on December 10, 2021, an immigration judge sustained the charge of removability.  (ECF
16  No. 6-1 at 11.)  On February 11, 2022, Petitioner filed a motion to terminate proceedings alleging
17  that he is a United States citizen.  (*Id.* at 12.)  On August 24, 2022, Petitioner's motion to
18  terminate proceedings was denied and Petitioner was ordered removed from the United States to
19  Mexico.  (*Id.* at 22.)

20  Petitioner appealed the immigration judge's removal order and denial of his motion to
21  terminate proceedings.  (ECF No. 6 at 4.)  On February 24, 2025, the Board of Immigration
22  Appeals dismissed the appeal.  (*Id.*)  On March 6, 2025, Petitioner filed a petition for review in

---

1.) Based on the substance of Petitioner's petition and the relief requested therein, the Court construed the petition as a motion for a TRO.  (ECF No. 4 at 2.)

[4]  Respondents were ordered to file an opposition to Petitioner's Motion for TRO.  (ECF No. 4 at 2.)  However, Respondents chose not to file an opposition despite the Court's order.  While the Court would ordinarily consider Petitioner's motion unopposed due to Respondents' failure to file an opposition, the Court exercises its discretion to reach the merits of Petitioner's claims and addresses Respondents' arguments to the extent they apply.

the Ninth Circuit. (*Id.*) The Ninth Circuit stayed the finality of Petitioner's removal pending a decision on his petition for review. *See Sanchez Morales v. Bondi*, 25-1429, Dkt. Entry 3.

On August 12, 2025, DHS detained Petitioner. (ECF No. 6 at 4.) On December 11, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) Based on the substance of Petitioner's petition and the relief requested therein, the Court construed the petition as a motion for a TRO. (ECF No. 4 at 2.)

## II.   STANDARD OF LAW

A TRO and a preliminary injunction are both extraordinary remedies. In general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* E.D. Cal. L.R. 231(a).

For both a TRO and a preliminary injunction, courts consider whether Petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh the petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

## III.   ANALYSIS

Petitioner argues his detention is unconstitutional as he is a United States citizen. (ECF No. 7 at 3.) Respondents contend: (1) this Court lacks jurisdiction over nationality claims; and (2) this Court should require Petitioner to exhaust his statutory remedy — the petition for review

3

before the Ninth Circuit.  (ECF No. 6 at 5.)  The Court first addresses Respondents' threshold arguments, followed by a discussion of each of the *Winter* elements.

         A.     <u>Jurisdiction</u>

Respondents contend 8 U.S.C. § 1252 provides that the exclusive method for obtaining judicial review of a final order of removal is through filing a petition for review in the court of appeals.  (ECF No. 6 at 5 (citing *Flores-Torres v. Mukasey*, 548 F. 3d 708,710 (9th Cir. 2008)).)  Respondents argue, therefore, challenges to final removal orders that are based on Untied States citizenship claim must be brought before the Ninth Circuit.  (ECF No. 6 at 5.)  Respondents urge the Court to require Petitioner to exhaust his statutory remedy before the Ninth Circuit and dismiss Petitioner's action.

As Petitioner points out, Petitioner's claim is not a challenge to a decision to remove Petitioner.  (ECF No. 7 at 2.)  Instead, Petitioner's claim is a challenge to the constitutionality of Petitioner's detention.  Under 28 U.S.C. § 1331, federal district courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  As such, the Court has jurisdiction to hear Petitioner's constitutional claims.

As to whether Petitioner was required to exhaust his claims, the Ninth Circuit has held Congress has never enacted any statute that would deprive a citizen of his right to a judicial determination of the legality of his detention simply because his case is pending before an administrative agency.  *See Mukasey*, 548 F.3d at 712.  Accordingly, the Court finds Petitioner was not required to exhaust his claims through a petition for review prior to filing his habeas petition.

Having jurisdiction to hear Petitioner's claims, the Court considers each of the *Winter* elements.

         B.     <u>Winter Elements</u>

                i.     *Likelihood of Success on the Merits*

Petitioner contends in 2006, the Superior Court of San Diego ordered the registration and filing of Petitioner's delayed California birth Certificate.  (ECF No. 7-1 at 2.)  Petitioner further contends a birth certificate was issued for him (ECF No. 7-2 at 2), and he obtained a social

1  security card from the Social Security Administration.  (ECF No. 7-3 at 2.)  Petitioner argues at
2  no time has any official government employee — federal or state — gone back to the Superior
3  Court of San Diego and requested reconsideration of the 2005 order.  (ECF No. 7 at 4.)  Petitioner
4  further argues, unless determined otherwise, the order of the Superior Court is the only final
5  determination of Petitioner's entitlement to the rights of citizenship and, until an Article III Court
6  decides otherwise, Petitioner is a citizen and his detention is unlawful.  (ECF No. 7 at 4.)

7       Here, the Court finds there are serious questions going to the merits of Petitioner's claim.
8  *See Mukasey*, 548 F.3d at 712 (finding a similar claim that petitioner was a United States citizen
9  and unlawfully detained "non-frivolous on its face").  "In our society liberty is the norm, and
10 detention prior to trial or without trial is the carefully limited exception."  *United States v.*
11 *Salerno*, 481 U.S. 739, 755 (1987).  The Supreme Court has recognized such exceptions only in
12 "certain special and narrow nonpunitive circumstances where a special justification . . . outweighs
13 the individual's constitutionally protected interest in avoiding physical restraint."  *Zadvydas v.*
14 *Davis*, 533 U.S. 678, 690, 692 (2001).

15      Respondents have not shown such an exception exists.  As Petitioner points out, absent
16 from Respondents' opposition is any justification — much less a special justification — as to why
17 Petitioner, an alleged United States citizen, should be detained during the pendency of his petition
18 for review.  Petitioner is a father to his twelve-year-old son, is gainfully employed as a flooring
19 subcontractor, and is an active member of the Make It Plain Bible Church, where he serves as a
20 deacon.  (ECF No. 7 at 5.)  In addition, Petitioner has not had any involvement with the criminal
21 justice system in over fifteen years.  (*Id.*)  Finally, Petitioner attended every hearing regarding his
22 removal.  (*Id.*)  Thus, the Court finds Petitioner is likely to succeed on his claim that his detention
23 is unconstitutional.  Even if there are serious questions as to the merits of Petitioner's citizenship
24 claim, the Court finds there is a strong likelihood of irreparable injury and that the injunction is in
25 the public interest such that a TRO should be granted.  *Alliance for the Wild Rockies v. Cottrell*,
26 632 F.3d 1127, 1135 (9th Cir. 2011).

27       C.   Irreparable Harm
28       The Ninth Circuit has recognized that there may be numerous "irreparable harms imposed

on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017).

Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").

The Court finds Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief. If Petitioner is a citizen, the government has no authority under the Immigration Nationality Act to detain him, as well as no interest in doing so, and his detention would be unlawful under the Constitution and under the Non–Detention Act, 18 U.S.C. § 4001. *See Mukasey*, 548 F.3d at 712 (noting the same). Absent a review, it appears that Petitioner would remain in custody until final determination of his appeal. This violation of Petitioner's due process rights is sufficient to satisfy the irreparable harm requirement. *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025).

### D. Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).

As discussed above, Petitioner has raised serious questions regarding the merits of his petition. Assuming Petitioner is a United States citizen, the balance of equities and public interest tip sharply in his favor. First, Respondents will not be prejudiced nor harmed by releasing Petitioner nor do they make any attempt to argue as such. Second, the public has a clear interest in ensuring its government does not unlawfully detain United States citizens. Finally, as set forth

1  above, Petitioner is married, has a twelve-year-old son and serves as a Deacon at the Make it
2  Plain Bible Church in Spring Valley. Given the factual record before it, the Court finds the
3  balance of equities and public interest factors weigh in Petitioner's favor.
4       Having found that Petitioner has raised serious questions regarding the merits of his
5  claims, this Court finds that release is warranted to return to the status quo ante. *See Yang v.*
6  *Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025)
7  (status quo ante is "the last uncontested status which preceded the pending controversy.").

8      **IV.    CONCLUSION**
9      In accordance with the above, IT IS HEREBY ORDERED that:
10  1. Petitioner's Motion for a Temporary Restraining Order is GRANTED;
11  2. Respondents must IMMEDIATELY RELEASE Petitioner Enrique M.S. from custody.
12      Respondents shall not impose any restrictions on him;
13  3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining
14      Petitioner pending a determination on his citizenship claim and until his removability has
15      been fully adjudicated;
16  4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a
17      preliminary injunction continuing this order. Respondents shall file responsive papers by
18      **Monday, December 29, 2025**. No hearing will be held unless requested by a party by
19      Tuesday, December 30, 2025. Fed. R. Civ. P. 65(b)(3);
20  5. Respondents are hereby notified of their right to apply to the Court for modification or
21      dissolution of the Temporary Restraining Order on two days' notice or such shorter notice
22      as the Court may allow. Fed. R. Civ. P. 65(b)(4);
23  6. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts
24      regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015
25      (9th Cir. 2011); and
26  7. Respondents' Motion to Dismiss (ECF No. 6) is DENIED.
27  //
28  //

7

IT IS SO ORDERED.

Date: December 19, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE